UNITED STATES, Appellee

v

BILLY WILLIAMS, Airman First Class,
U. S. Air Force, Appellant

16 USCMA 210, 36 CMR 366

No. 18,920

April 29, 1966

*Lieutenant Colonel Robert S. Amery* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

### Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial, the accused was convicted of murder, in violation of Uniform Code of Military Justice, Article 118, 10 USC § 918, and sentenced to dishonorable discharge,

forfeiture of all pay and allowances, confinement at hard labor for eight years, and reduction to Airman Basic. Intermediate appellate authorities affirmed, and we granted accused's petition for review on the issue whether the law officer erred prejudicially in restricting cross-examination of a prosecution witness.[1]

## I

The evidence in the record need not be detailed. In sum, it demonstrates compellingly that the accused, during an altercation with his victim, brutally stabbed him several times. One of the wounds penetrated the root of a lung and, despite intensive medical treatment, the victim expired on the following morning.

The sole defense proffered at the trial was lack of mental responsibility. Two expert witnesses testified on behalf of the accused. Dr. Zwingmann, a psychologist, examined Williams and subjected him to various standard tests. He stated accused was, as the result of a mental defect, unable to adhere to the right at the time of his offense. He was unable to determine with certainty whether accused could, at the same time, distinguish right from wrong. Dr. Hansen, a specialist in psychiatry and neurology, also examined, observed, and tested accused. While not "100% sure," he declared "with reasonable certainty" that accused, at the time of the stabbing, could not distinguish right from wrong. It was also his unqualified view that accused could not then adhere to the right. At the time, accused was psychotic.

In rebuttal, the Government adduced the testimony of Dr. Mastrianni, also a duly qualified psychiatrist. Dr. Mastrianni likewise had examined, observed, and tested accused, together with other members of the staff at an Air Force Hospital. He was of the view that accused was, at the time of his offense, not psychotic; that he could then distinguish right from wrong; and that he could adhere to the right. Mastrianni believed accused suffered from a character and behavior disorder, rendering him emotionally unstable, and impairing his ability to adhere to the right.

On cross-examination, Dr. Mastrianni declared his opinion was based on the results of psychological testing, accused's social history, and his interviews with him. When defense counsel, however, sought to ascertain from the witness "what you said and what he said in that examination," the law officer sustained trial counsel's objection on the basis of hearsay. He took such action despite defense counsel's pointing out that the interviews of the accused were a "basis for the [doctor's] opinion." The law officer declared his ruling was made "with that understanding," and rejected counsel's citation of authority to the contrary.

## II

The issue thus framed for our consideration is whether the defense may be so restricted in its ▮ cross-examination of a Government expert witness as to the basis of his opinion that accused was sane, on the ground that the statements so received would constitute hearsay and self-serving declarations by the accused. We conclude, under the circumstances here presented, it may not be so limited, and the law officer's ruling to the contrary was prejudicially erroneous.

The claim that the desired testimony would constitute hearsay and self-serving declarations may at once be put to rest. Hearsay, basically, is proof in court of statements made out of court for the purpose of having their contents accepted as the truth. See, generally, Manual for Courts-Martial, United States, 1951, paragraph 139a. In connection with probing the basis for psychiatric opinion, however, and receiving evidence of an accused's out-

[1] We earlier granted a joint motion by the Government and accused to remand the case to the board of review for consideration of affidavits in which accused alleged incompetency of his trial defense counsel. This issue was resolved by the board adversely to him, and the petition which we granted came to us following this decision.

of-court declarations, the truth or falsity of those statements is not normally in issue. The inquiry is not into whether accused acted as he said he did, but in what he said as being a part of the foundation of the expert's ultimate conclusion as to responsibility. In short, as the Manual, supra, quaintly illustrates:

"The admissibility of evidence of a statement disclosing motive, intent, or state of mind or body constitutes . . . hearsay . . . only when the disclosure depends upon the statement being accepted as true. If the disclosure results from the mere fact that the statement was made, as when the mental condition of a person is indicated by his statement that he is the Emperor Napoleon, the admissibility of evidence of the statement does not constitute . . . hearsay. . . ." [Manual, supra, paragraph 142d.]

What the defense expressly sought here is not, as the Government argues, a hearsay, self-serving recital of the circumstances of the crime, but, as counsel below indicated, the development of the conversations with the accused which Dr. Mastrianni indicated, in part, led him to form his opinion. It may be conceded that this might necessarily have involved accused's version of what occurred during the fatal incident, but, once the Government has offered the witness' opinion, it must suffer the consequences of having its basis developed. Undoubtedly, it is entitled to an instruction that the matters thus elicited may be considered by the court only in connection with the issue of mental responsibility and the weight to be accorded Mastrianni's expert opinion, but it cannot urge the self-serving and out-of-court character of the statement as cutting off the accused's right to cross-examination.[2]

Thus, the Manual for Courts-Martial, supra, expressly provides, "On direct or cross-examination he [the expert witness] may be required to specify the data upon which his opinion is based, but if in the course of relating the data he refers to matters which, if themselves regarded as evidence in the case, would be inadmissible and might improperly influence the court, . . . the law officer . . . should instruct the court in open session that such matters are to be considered only with respect to the weight to be given to the expert opinion." Manual, supra, paragraph 138e.

This Court has likewise adverted to the right of counsel to cross-examine expert witnesses extensively as to the basis of their opinions regarding an accused's mental responsibility. In United States v Heilman, 12 USCMA 648, 31 CMR 234, and United States v Walker, 12 USCMA 658, 31 CMR 244, the Court was concerned with the question whether an expert witness' opinion might be received without separately proving the matters which formed the basis therefor. Ultimately concluding that the opinions were admissible, without regard to proof of the data on which they rested, the Court emphasized the existence and nature of such considerations went to the weight to be accorded the testimony and not its admissibility. In so doing, it pointed up the importance of the right to develop the nature of these bases for the witnesses' conclusions through the great engine of cross-examination. In *Heilman*, supra, we said, at page 652:

". . . In this situation it was proper to permit Dr. Miller to give that opinion. The extent of his examination, his opportunities to observe the accused, the degree to which he was informed of accused's condition, and other matters in connection therewith were proper subjects of inquiry, on cross-examination, that the court might deter-

---

[2] Appellate defense counsel argue before us that, lacking the law officer's erroneous ruling, it would have been able to develop statements by accused to Dr. Mastrianni which would have placed self-defense in issue, as well as various lesser included offenses. As the record is silent concerning what accused communicated to the witness, the argument is speculative. Moreover, such use of the evidence would indeed justify the Government's contention that this was purest hearsay.

mine the weight to be given to his testimony."

And in *Walker,* supra, at page 662, we noted:

"We have before us a case in which each side produced an expert witness, both of whom based their testimony on interviews with and examinations of the accused. They came to opposite conclusions. Clearly such conflict is to be settled by the court-martial. All matters in connection with the respective examinations could be considered by the court in determining the weight to be given to the evidence of each witness. . . . The law officer allowed full opportunity to pursue these matters and expressly ruled that all of them were before the court members to be used in determining the weight to be given to the evidence."

See also United States v Burke, 28 CMR 604; United States v Flynn, 2 CMR 565; and United States v McFerren, 6 USCMA 486, 20 CMR 202.

The long and short of this case is that accused was here denied the opportunity to test the validity of Dr. Mastrianni's opinion and to attack its weight. Cf. United States v McFerren, supra. He presented two distinguished witnesses who believed him to lack responsibility for the offense charged. The Government's equally qualified witness concluded he was sane. That was the only real question presented in the case; yet, there was a substantial, albeit erroneous, limitation placed upon counsel's inquiry into the basis for this witness' view, critical as it was to the question to be decided. Cf. United States v Walker, supra. It must be remembered that psychiatric expert witnesses usually testify directly as to the ultimate question to be decided by the court-martial. Unless their opinions are to be given controlling and final weight on the issue—a matter in which all courts have wisely refused to abdicate their authority—the widest range must be given to the scope of counsel's inquiry into the basis for these conclusions. Only then will the fact finders be able to make a reasoned judgment concerning a question which, all too often, seems to find even the experts in violent disagreement. Under the circumstances of this case, the foreclosure of any opportunity to inquire into the interchanges between accused and Dr. Mastrianni, as the basis for the latter's conclusion of responsibility, was prejudicially erroneous.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.